IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HERBERT CHARLES WATSON,      )
                             )
            Plaintiff,       )
                             )
      v.                     ) CIVIL NO. 1:03CV00394
                             )
JOHN W. SNOW, Secretary      )
of the Treasury of the       )
United States of America,    )
                             )
            Defendant.       )

MEMORANDUM OPINION

BULLOCK, District Judge

On May 7, 2003, Plaintiff, Herbert Charles Watson, filed a Complaint alleging that Defendants, John W. Snow, Secretary of the Treasury of the United States of America, and Chuck Mobley, individually and as Acting Manager of the local branch of the Internal Revenue Service retaliated against Plaintiff for prior Equal Employment Opportunity ("EEO") activity. On December 18, 2003, Plaintiff filed an Amended and Supplemental Complaint ("Amended Complaint"). Although neither the Complaint nor the Amended Complaint specifically states the discriminatory basis for Watson's original protected activity, the alleged retaliation appears to be in violation of Title VII of the Civil Rights Act of 1964.[1] 42 U.S.C. §§ 2000e-16, et seq.

---

[1] "'[T]he complaint itself need not contain more than the allegation that the adverse employment action was taken because of a protected characteristic.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 n.3 (4th Cir. 2005) (quoting Costa v. Desert Palace, Inc., 299 F.3d 838, 856 n.7 (9th Cir.
(continued...)

On March 18, 2004, Snow filed an Answer, and Mobley filed a motion to dismiss for failure to state a claim. On July 23, 2004, the court granted Mobley's motion, leaving Snow as the sole defendant. This matter is before the court on Defendant's motion for summary judgment pursuant to Federal Rules of Civil Procedure 56. Defendant has also filed a motion to strike certain exhibits attached to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem. Opp'n"). For the reasons stated below, Defendant's motion for summary judgment will be granted. Therefore, Defendant's motion to strike is moot.

FACTS

Watson is a Caucasian male born on January 7, 1946. He was hired by the Internal Revenue Service ("IRS") in 1983 and transferred to the Greensboro office in 1989. Sometime during 1994, Albert Hoosier, Jr., the Collection Chief, assigned Watson to work under the supervision of Patsy Simpson, an African-American female. Shortly thereafter, Watson reported Simpson for alleged ethical violations. Additionally, Plaintiff

---

[1](...continued)
2002) (en banc)). To the extent that the basis is a violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, et seq., the analysis is the same. See, e.g., Fennell v. First Step Designs, Ltd, 83 F.3d 526, 535 n.9 (1st Cir. 1996) ("The analytical framework for ADEA discrimination and retaliation cases was patterned after the framework for Title VII cases, and our precedents are largely interchangeable.").

2

filed an "informal complaint of employment discrimination" (Am. Compl. at ¶ 10), which he also describes as "an EEOC grievance [initiated] within agency channels." (Pl.'s Mem. Opp'n at 4.) The complaint asserted that Simpson "was removing white men over the age of 40 from the department one by one, by . . . lowering the ratings of the targeted white male employees.[2]" (Pl.'s Mem. Opp'n at 3.)

The discrimination claim was resolved before a formal EEO complaint was ever filed, and, as a part of that resolution, Watson was transferred to the Columbia, South Carolina office in 1996. Plaintiff claims that Hoosier was aware of the informal EEO complaint. Watson returned to the Greensboro office in 1999 as a Revenue Officer, GS-1169-11. His immediate supervisor was Charles R. Mobley, Jr., who was the Revenue Officer Group Manager for Greensboro and Winston-Salem. Mobley, in turn, reported directly to Hoosier.

In 2000, the IRS announced the creation of a new position entitled Property Appraiser Liquidation Specialist ("PALS"), GS-1171-12. Watson prepared applications for two of the PALS openings. Although the record does not indicate why, Plaintiff

---

[2] Every party and agency involved in this case has accepted that Plaintiff did engage in protected activity in 1995 when Watson filed what he calls an "informal complaint of employment discrimination." (Am. Compl. at ¶ 10.) No documentation of such a complaint, however, was submitted by either party. For purposes of this motion, the court will assume that Plaintiff did engage in the type of protected activity that is statutorily requisite to maintaining a retaliation claim.

3

did not submit his applications until the final hour of the final day, which meant he was forced to send them via facsimile. His supervisor, Mobley, actually helped him transmit the documents on time, but due to the number of pages in his applications, the transmissions failed. Mobley documented their attempt, then mailed the applications with a written request that the recipient office accept the applications as timely.

Ultimately, Watson was not chosen for either of the vacancies to which he applied. In fact, the record indicates a number of irregularities that suggest he may never have been meaningfully considered for either position by the ranking official or the selecting official, both of whom were located in the Atlanta office and did not know Watson. Plaintiff sought EEO counseling on December 1, 2000 and subsequently filed a formal complaint on February 14, 2001. The Administrative Judge ruled in favor of the IRS on February 7, 2003. A final agency letter was issued on February 25, 2003.

During the administrative review of Watson's EEO complaint regarding his PALS non-selection, Plaintiff applied for two Revenue Officer, GS-1169-12, vacancies in the Greensboro office. According to Watson, Mobley and Hoosier "interrupted the standard selection process," which would have ordinarily been handled by a disinterested agency official. (Pl.'s Mem. Opp'n at 8.) Mobley ranked the applicants and Hoosier selected two candidates from the "best qualified" list. Four individuals applied, and all four received rankings that surpassed the "best qualified"

4

threshold.  Hoosier received a list of "best qualified" candidates assembled in order of rank from highest to lowest and was authorized to select any candidate from that list regardless of their ordinal.  On February 25, 2002, Hoosier selected the top two candidates from the list.  Watson was ranked third.

Watson contacted an EEO counselor on May 15, 2002.  He filed a formal EEO complaint alleging age discrimination and retaliation on August 12, 2002.  The Equal Employment Opportunity Commission ("EEOC") accepted the complaint for investigation, but later dismissed the case.  A final action letter was issued "[o]n or about November 20, 2003."  (Am. Compl. at ¶ 25.)

On February 2, 2003, Mobley downgraded Watson's performance evaluation from "Fully Exceeds Expectations" to "Meets Expectations."  (Pl.'s Mem. Opp'n Ex. T.)  The National Treasury Employees Union  filed a grievance on behalf of Watson with the Federal Labor Relations Authority ("FLRA").  After arbitration and an FLRA ruling in favor of Plaintiff, Watson's performance evaluations were returned to "Fully Exceeds Expectations."

DISCUSSION

I.

Summary judgment must be granted when an examination of the pleadings, affidavits, interrogatories, and other proper exhibits demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

5

See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of persuasion on all relevant issues. Celotex, 477 U.S. at 323. Once the moving party has met that burden, the non-moving party must then persuade the court that a genuine issue remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); see also Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc., 33 F.3d 390, 393-94 (4th Cir. 1994) (noting that the moving party on summary judgment can simply argue the absence of evidence by which the non-movant can prove her case). Conclusory statements, speculative allegations, and "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); see also Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). All reasonable inferences are to be drawn in favor of the party opposing summary judgment. Anderson, 477 U.S. at 255.

II.

Although the Fourth Circuit has not expressly held that either Title VII or the ADEA gives federal employees the right to

6

bring a retaliation claim, the court will assume that such a right exists for the purposes of this case. See Laber v. Harvey, ____ F.3d ____, ____ n.30, No. 04-2132, 2006 WL 348289, at *18, n.30 (4th Cir. Feb. 16, 2006); Baqir v. Principi, 434 F.3d 733, 747 n.16 (4th Cir. 2006). Claims of retaliation "may be raised for the first time in federal court if the retaliation occurred after the filing of the administrative charge." Salami v. N.C. Agric. & Tech. State Univ., 394 F. Supp. 2d 696, 717 (M.D.N.C. 2005) (citing Nealon v. Stone, 958 F.2d 584, 590 (4th Cir. 1992)). In this case, however, Watson filed EEO complaints for both the alleged 2000 and 2002 acts of retaliation. Defendant contests whether Watson contacted an EEO counselor within the statutorily prescribed time period. See 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.") For the purposes of deciding this motion the court will view this fact in favor of the non-moving party and will accept that Watson's pursuit of administrative remedies was timely and exhausted.

III.

Title VII prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an unlawful employment practice. See 42 U.S.C. § 2000e-3(a). In the absence of evidence that an impermissible

7

factor motivated the employer's adverse decision, retaliation may be proved through the indirect, burden-shifting method set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973), and its progeny. <u>See also</u> <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 248 (4th Cir. 2000). Under the <u>McDonnell Douglas</u> framework, Plaintiff must first establish a <u>prima facie</u> case of retaliation, which requires that the plaintiff show (1) that the employee engaged in protected activity, (2) that the employer took an adverse employment action against the employee, and (3) that a causal connection existed between the protected activity and the adverse action. <u>See</u> <u>EEOC v. Navy Fed. Credit Union</u>, 424 F.3d 397, 405-06 (4th Cir. 2005). "The employer's knowledge that the employee has engaged in protected conduct . . . is necessarily subsumed in the requirement of a causal connection, for if the employer did not know of the protected activity a causal connection to the adverse action cannot be established." <u>Ross v. Commc'ns Satellite Corp</u>, 759 F.2d 355, 365 n.9 (4th Cir. 1985), <u>abrogated on other grounds</u>, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989); <u>see also</u> <u>Dowe v. Total Action Against Poverty</u>, 145 F.3d 653, 657 (4th Cir. 1998) ("[K]nowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case").

    The burden of demonstrating a <u>prima facie</u> case is generally not demanding. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981). Once a <u>prima facie</u> case is established, the burden shifts to the employer who must come forward with a

legitimate, non-retaliatory reason for the adverse action. See Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004). If the employer can articulate such a reason, the plaintiff must show that the employer's proffered reason is pretextual and that the employer intentionally retaliated against the employee. See Laber, ____ F.3d at ____, 2006 WL 348289, at *18. Under some circumstances, a strong prima facie case coupled with sufficient evidence that the employer's explanation is false may be enough to support a finding of discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147-48 (2000).

A.

Watson argues that his non-selection for the two PALS vacancies in 2000 was a retaliatory act in response to his informal EEO complaint in 1995 alleging – as far as the court can ascertain – race, sex, and possibly age discrimination. An informal EEO complaint is statutorily protected activity and satisfies the first prima facie element. See 42 U.S.C. § 2000e-3(a) (stating that an employee who "made a charge, testified, assisted, or participated in any manner in an [EEOC] investigation, proceeding, or hearing" engaged in protected activity) (emphasis added); Hooven-Lewis v. Caldera, 249 F.3d 259, 273 (4th Cir. 2001) (recognizing that informal EEO contacts and complaints are protected activity). Moreover, the IRS's decision not to promote Watson, an otherwise qualified employee, is considered an adverse employment action, which satisfies the

9

second prima facie element.  See Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001).

Watson's prima facie case stalls, however, on the third element for two compelling reasons.  First, Watson has offered no evidence that either the ranking official or the selecting official had any knowledge of his protected activity.  The record is not even clear as to whether Mobley was aware in 2000 of Watson's informal EEO complaint in 1995.  Hoosier is the only official whose knowledge of Plaintiff's 1995 protected activity is supported by the record.  Nevertheless, Watson asserts that either Mobley or Hoosier, or both, "were involved in the decision to disqualify [P]laintiff's application, and that they were assisted by others acting in concert with them to retaliate and to discriminate against [P]laintiff."  (Am. Compl. at ¶ 22.) Watson offers no evidence in support of this contention except for one email, which shows some communication did occur between the Atlanta office, where the ranking and selection took place, and the Greensboro office.[3]  (Pl.'s Mem. Opp'n Ex. H.)  Any assertion that Hoosier or Mobley interfered with the ranking or selection process is mere speculation and is not enough to withstand a motion for summary judgment. See Ash v. United Parcel Serv., Inc., 800 F.2d 409, 411-12 (4th Cir. 1986).  While

---

[3] The email suggests that Watson himself placed a telephone call to the Atlanta office to check on his application status. The only other inference to be made is that Mobley may have also participated in the call for the purpose of confirming that Watson had attempted to transmit his applications by facsimile prior to the deadline.

10

some questions may exist about the ranking and selection process in the Atlanta office, these issues are not material to Plaintiff's retaliation claim because Watson cannot show that anyone in the Atlanta office was aware of his prior protected activity.

Second, even if the relevant officials had knowledge, a five-year gap exists between the protected activity in 1995 and the alleged retaliatory act of non-selection in 2000. "A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." Dowe, 145 F.3d at 657 (concluding that three-year lapse was too long for causation to survive). Therefore, Watson cannot establish a prima facie case that his 2000 PALS non-selection was a retaliatory act in response to his 1995 protected activity.

B.

While the EEOC's administrative review of the 2000 PALS complaint was still pending, Watson applied for two GS-12 Revenue Officer openings in the Greensboro office in 2002. He was not chosen for either and claims his non-selection constitutes a second act of retaliation. Because Plaintiff has presented no evidence that an impermissible factor motivated his employer's decision, this claim also must be analyzed under the above-mentioned McDonnell Douglas framework. It is undisputed that Watson engaged in protected activity and that he suffered an

11

adverse employment action when his superiors chose not to promote him. The first question, therefore, is whether a causal connection exists between the two.

The ranking official in 2002 was Mobley and the selecting official was Hoosier – the very individuals named in Watson's 2000 complaint. Therefore, the officials who made the promotion decisions were aware of Watson's protected activity. Knowledge alone, however, is not sufficient to create a causal connection. Price, 380 F.3d at 213. Defendant argues that Watson cannot show such a connection (1) because Watson failed "to show that his not being selected for the vacancies to which he applied would not have occurred despite his filing an EEO claim" and (2) because the "prior EEO activity in 2000 is too far removed from the alleged retaliatory act." (Memorandum in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem. Supp.") at 14.) Defendant's first point is not applicable to this stage of the burden-shifting framework. Plaintiff is not required to show "but for" causation until a prima facie case is established and Defendant articulates a legitimate, non-retaliatory reason for its action. See Ross, 759 F.2d at 365-66; see also Dwyer v. Smith, 867 F.2d 184, 191 (4th Cir. 1989) (reaffirming the "but for" test in Ross). But see Brackman v. Fauquier County, No. 02-1161, 2003 U.S. App. LEXIS 13731, at *19 (4th Cir. July 9, 2003) (applying the "but for" test in Ross to the third prima facie element).

Defendant's second point is pertinent to the third element

12

of the prima facie analysis. Approximately twelve months lapsed between the filing of Watson's PALS complaint[4] and Hoosier's selection of the two highest ranked applicants for the GS-12 Revenue Officer vacancies. Watson has provided no other evidence to support his claim and has made no argument that this was the first chance Hoosier or Mobley had to retaliate for Watson's 2000 protected activity. See Price, 380 F.3d at 213 (stating that, although nine to ten months tends to negate inference of causation, a reasonable trier of fact could find causal connection where employer executed adverse action at first available opportunity). Therefore, the one-year time lapse negates any inference of retaliation. See Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) ("A thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation.");see also King v. Rumsfeld, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (noting that ten weeks is "sufficiently long so as to weaken significantly the inference of causation").

Assuming, arguendo, that Watson could establish a prima facie case of retaliation, the burden would shift to Defendant to produce a legitimate, non-retaliatory reason for the adverse action. According to Defendant, the reason for Watson's non-selection is that, although Watson made the "best qualified"

---

[4] The record does not indicate exactly when Hoosier became aware of Watson's protected activity regarding his PALS non-selection in 2000. The record does show that Mobley was aware that Watson had sought EEO counseling prior to the formal complaint made in February of 2001. (Def.'s Mem. Supp. Ex. A-1.)

13

list, two other individuals were ranked higher than Watson based on their performance evaluations and qualifications. Hoosier was authorized to select any candidate from the "best qualified" list, regardless of rank. Once presented with that list, Hoosier selected the top two candidates, leaving Watson as first runner-up. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (citing Burdine, 450 U.S. at 258-59 and Young v. Lehman, 748 F.2d 194, 198 (4th Cir. 1984)).

Given that Defendant carried his burden, Watson must show that the stated reason is pretextual and that his employer intentionally retaliated against him. In other words, Watson must show that but for his protected activity, he would have been selected. Plaintiff capitulates at this stage of the burden-shifting process. In a section entitled "No Need To Demonstrate Pretext," Plaintiff acknowledges Defendant's proposed reason, but contends that Defendant "failed to offer any <u>evidence</u>" that Hoosier selected the top two candidates based on their rankings. (Pl.'s Mem. Opp'n at 19 (emphasis in original).) This argument fails to properly construe Defendant's burden, which is simply to produce "'evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, non-discriminatory reason.'" Reeves, 530 U.S. at 142 (quoting Burdine, 450 U.S. at 254). Defendant accomplished that by

14

offering affidavits and admissible documents indicating that the candidates had been ranked on the basis of their performance and qualifications, that the selecting official had the prerogative to choose anyone from the list, and that the top two were chosen.

While Defendant's burden is one of production, the burden of persuasion remains on Plaintiff throughout the retaliatory proof scheme. See id. (citing Burdine, 450 U.S. at 253). As noted above, Plaintiff leveraged its position on the argument that Defendant failed to articulate a legitimate, non-retaliatory reason for Watson's 2002 non-selection. Such a reason was set forth however, and Watson has made no effort to show that Defendant's proffered reason is without credence (for example, by discrediting Mobley's rankings). Thus, Watson failed to demonstrate "'by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"Id. at 143 (quoting Burdine, 450 U.S. at 253).

C.

In his Amended Complaint, Watson describes a third act of retaliation in which Mobley lowered Watson's 2003 performance evaluation. (Am. Compl. ¶ 26.) As with his first two claims, Plaintiff has supplied no evidence that an impermissible factor motivated his employer's decision, which means the claim must be analyzed under the now familiarMcDonnell Douglas framework. Regardless of the method of proof, "the existence of some adverse

15

employment action is required." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004).

In this instance, Mobley's downgrade of Watson's job performance does not constitute an adverse employment action. The Fourth Circuit requires, at the very least, "evidence that the challenged discriminatory acts or harassment adversely effected [sic] the terms, conditions, or benefits of the plaintiff's employment."[5] Von Gunten, 243 F.3d at 865 (internal quotation marks omitted). Watson has presented no evidence that his official title, GS grade and level, benefits, or salary were altered as a result the downgrade. Nor has he averred that the poor evaluation disqualified him from yearly bonuses or promotional opportunities. Without such evidence, Watson cannot establish a prima facie case and, therefore, cannot maintain this claim of retaliation.

CONCLUSION

Watson has failed to carry any of his burdens under the McDonnell Douglas framework. For the reasons set forth in this

---

[5] That is the standard for claims under 42 U.S.C. § 2000e-(3), which prohibits retaliation in the private sector. The standard for federal employees, like Watson, has been held to be more onerous. See Von Gunten v. Maryland, 243 F.3d 858, 865 n.3 (4th Cir. 2001) (noting that the "ultimate employment decision" standard applies to claims under 42 U.S.C. § 2000e-16); see also Peterson v. West, No. 01-1333, 2001 U.S. App. LEXIS 19726, at *5-6 (4th Cir. Sept. 5, 2004) (requiring an "ultimate employment decision" to satisfy the second prima facie element in Title VII retaliation claim brought by a federal employee).

16

memorandum opinion, Defendant's motion for summary judgment will be granted.  Therefore, Defendant's motion to strike is moot.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

March 20, 2006                                    _____
                                                   United States District Judge